*Attorney Grievance Commission of Maryland v. Francis Edward Yeatman,* AG No. 42, September Term, 2023. Opinion by Biran, J.

**ATTORNEY MISCONDUCT – DISCIPLINE – DISBARMENT –** Respondent, Francis Edward Yeatman, violated Maryland Attorneys' Rules of Professional Conduct 19-301.1 (Competence), 19-301.3 (Diligence), 19-301.4(a)(2) and (3) (Communication), 19-308.1(b) (Bar Admission and Disciplinary Matters), and 19-308.4(a) and (d) (Misconduct). These violations arose from Respondent's conduct in two client matters, in which Respondent failed to communicate with, and effectively abandoned, his clients. In addition, in connection with Bar Counsel's investigation, Respondent failed to respond to requests for information by Bar Counsel. Given these violations and the existence of several aggravating factors, the Supreme Court of Maryland ordered that Respondent be disbarred.

IN THE SUPREME COURT

OF MARYLAND

AG No. 42

September Term, 2023

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

FRANCIS EDWARD YEATMAN

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Opinion by Biran, J.

_____

Filed: November 22, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

On February 20, 2024, Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action (the "PDRA") alleging that Respondent, Francis Edward Yeatman, violated several rules of professional conduct,[1] namely Rules 1.1 (Competence), 1.3 (Diligence), 1.4(a)(2) and (3) (Communication), 8.1(b) (Bar Admission and Disciplinary Matters), and 8.4(a) and (d) (Misconduct).

This Court designated the Honorable Sharon V. Burrell of the Circuit Court for Montgomery County to serve as the hearing judge. The hearing judge issued Findings of Fact and Conclusions of Law on July 8, 2024. Respondent did not file any exceptions. Petitioner excepted to the hearing judge's failure to find the existence of the aggravating factor of a pattern of misconduct and recommended that Respondent be disbarred. For the reasons stated below, we conclude that Respondent violated the rules as alleged in the PDRA, sustain Petitioner's exception, and determine that disbarment is the appropriate sanction.

**I**

**The Hearing Judge's Findings of Fact**

We summarize here the hearing judge's findings of fact.

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and recodified without substantive changes in Title 19 of the Maryland Rules. In the PDRA, Petitioner cited provisions of both the MLRPC and MARPC, presumably because Respondent's work in connection with one of the matters at issue began before, and continued after, July 1, 2016. For ease of reference, we will use the shorter designations of the MLRPC – *i.e.*, Rule 1.1 in lieu of Maryland Rule 19-301.1. *See also* Md. Rule 19-300.1(22).

*Background*

Respondent was admitted to the Maryland Bar on October 26, 1962. At all times relevant to this case, Respondent maintained an office for the practice of law in Montgomery County with his son, Douglas Yeatman.

*Estate of Ben Petree*

On or about July 19, 2017, Ben Petree died testate. The decedent's daughter, Caroline Petree Iglehart, was appointed the personal representative of the estate. Ms. Iglehart retained Respondent to represent her in her capacity as personal representative. On August 25, 2017, a Petition for Probate was filed with the Register of Wills for Montgomery County.

On April 24, 2020, Respondent informed Ms. Iglehart's son, Chris Iglehart, that a deed had been signed transferring a property in Silver Spring, Maryland (the "Silver Spring Property") to the Katherine Federline & Dennis Federline Special Needs Trust. Respondent further told Mr. Iglehart: "[P]lease send all bills for that property to me. Upon receipt of the bills, I will get them to the trustee … so that the bills can be paid and transferred to [the trustee's] name."

On June 3, 2020, Mr. Iglehart emailed Respondent concerning two estate-related matters. Respondent failed to respond to this email. On August 5, 2020, Mr. Iglehart sent another email to Respondent, this time attempting to obtain a status update as to a list of open items regarding the estate. Respondent also failed to respond to that email. On August 13, 2020, Mr. Iglehart sent an email to Respondent, requesting guidance about the payment of bills for the Silver Spring Property and expressing frustration regarding Respondent's

lack of communication. Respondent failed to reply to that email as well. On August 24, 2020, Mr. Iglehart attempted to contact Respondent by email to address issues with the transfer of the Silver Spring Property to the trust and Respondent's lack of communication.[2] Respondent once again failed to reply to Mr. Iglehart.

On September 10, 2020, the Register of Wills for Montgomery County issued a "Show Cause Referral" to the Orphan's Court relating to the failure of the personal representative to file the Fourth Account in the case of *Estate of Ben Petree*, Estate No. W92388.

Mr. Iglehart sent Respondent emails on September 28, 2020, November 9, 2020, January 10, 2021, February 22, 2021, and March 30, 2021.[3] Respondent replied only to the January 10 email. In that reply, Respondent stated that he would send an email soon regarding "next steps." However, Respondent failed to send any such follow-up email.

On March 3, 2021, Judge Kevin G. Hessler issued an Order to Show Cause why the personal representative should not be removed for failure to file the Fourth Account. On April 1, 2021, Judge Christopher C. Fogelman continued the show cause hearing "to May

---

[2] In his August 24 email to Respondent, Mr. Iglehart said: "I just received a notice and bill showing the Pepco electric bill for the [Silver Spring Property] is past due…. I again restate my concerns that it appears that the [Silver Spring Property] has not been transferred from the estate to the trust."

[3] In his September 28, 2020 and January 10, 2021 emails to Respondent, Mr. Iglehart again complained that he was continuing to receive Pepco bills for the Silver Spring Property. In the January 10 email, Mr. Iglehart told Respondent that the Pepco bills are "obviously not being paid … as the balance grows each month." The record reflects that Mr. Iglehart sent a sixth email to Respondent during this period of time (dated October 25, 2020). Respondent also failed to reply to that email.

4, 2021 with the stipulation that if the Account is filed prior to the hearing the matter shall be dismissed." Respondent did not file the Fourth Account prior to the May 4 hearing.

In or about April 2021, Caroline and Chris Iglehart engaged another attorney, Joshua Winger, to restore communications with Respondent and address the Igleharts' remaining estate administration items. On April 7, 2021, Mr. Winger contacted Respondent and Douglas Yeatman to schedule a conference call. On April 21, 2021, Respondent and Douglas Yeatman participated in a video conference call with the Igleharts and Mr. Winger. Following the conference call, Mr. Iglehart thanked Mr. Winger for "facilitat[ing] the conversation between us and the Yeatman firm." Mr. Winger replied: "We are glad communication has improved between the Yeatman firm and you, enableing [sic] the Yeatman firm and you to resume working toward conclusion."

On May 4, 2021, Judge Bibi M. Berry presided over the continued show cause hearing. Judge Berry continued the show cause hearing to the next day, May 5, 2021, with the stipulation that if the Fourth Account "is filed prior to the hearing the matter shall be dismissed." On May 4, 2021, Respondent filed a Fourth & Final Administration Account of Caroline Petree Iglehart, Personal Representative. On June 16, 2021, Judge David W. Lease approved the Fourth and Final Account.

On July 20, 2021, Douglas Yeatman advised Mr. Iglehart to "have the accountant prepare a 2020 return so that the beneficiaries can deduct the excess losses on termination on their 2021 individual income tax returns." On August 1, 2021, Mr. Iglehart sent Respondent and Douglas Yeatman a copy of the draft 2020 estate tax return so that the Yeatman firm could review and approve the filing. Neither Respondent nor Douglas

4

Yeatman replied to the August 1 email. Mr. Iglehart emailed Respondent and Douglas Yeatman on August 28, September 5, and September 19, 2021, about the status of the review of the 2020 estate tax return. Respondent and Douglas Yeatman failed to respond to these emails.

In or around November 2021, Mr. Iglehart contacted Mr. Winger to inquire about retaining Mr. Winger's firm to take over the work regarding the estate. On November 4, 2021 and November 23, 2021, Mr. Winger placed calls to the Yeatman firm and left a voicemail message. On December 2, 2021, Mr. Winger wrote to Respondent and Douglas Yeatman regarding the final fiduciary income tax returns and final distributions to legatees. Neither Respondent nor Douglas Yeatman responded to Mr. Winger's November calls or his December letter.

*Estate of Margaret McNulty*

On June 24, 2010, Margaret McNulty executed the First Amendment of the Revocable Trust Agreement of Margaret J. McNulty dated March 4, 1999. The instrument designated 12 charities as beneficiaries to Ms. McNulty's trust, with the balance of the trust to be distributed in equal shares to the beneficiaries upon Ms. McNulty's death.[4]

In or around December 2013, Respondent first contacted Priests of the Sacred Heart to notify the organization that it was named in Ms. McNulty's trust.[5] On or about August 15, 2014, Respondent provided Priests of the Sacred Heart with an initial distribution of

---

[4] The hearing judge's findings referred to 11 charities, but the trust document lists 12 charities as beneficiaries.

[5] The record reflects that Ms. McNulty died in August 2012.

5

$37,500. In the letter accompanying the initial distribution check, Respondent advised that he was in the process of collecting additional assets for Ms. McNulty's trust as well as resolving tax issues, and that he expected to be able to make another distribution in the months ahead.

By letter dated November 25, 2015, Respondent advised Reverend Peluse of Priests of the Sacred Heart that he anticipated making final distributions to the beneficiaries before December 31, 2015, and that "$80,891.03 remained on hand in the bank."

On or about July 2, 2018, Pamela Godsell, the Mission Advancement Manager for Priests of the Sacred Heart, called Respondent for a status update and left a message. Respondent returned the call and indicated that he would try to complete the estate in August 2018. On March 24, 2020, Respondent advised Ms. Godsell that a final distribution would be made within 60 days. Thereafter, Respondent failed to provide the final distribution or respond to requests for information that representatives of Priests of the Sacred Heart made on December 10, 2020, February 12, 2021, July 7, 2021, August 30, 2021, and January 17, 2022.

<em>Bar Counsel's Investigation</em>

On or about January 23, 2022, Ms. Iglehart filed a complaint against Respondent with Petitioner. By letter dated February 3, 2022, Bar Counsel requested that Respondent provide a written response to Ms. Iglehart's complaint. Respondent failed to timely respond. On March 3, 2022, Bar Counsel forwarded the February 3 correspondence to Respondent via email, first-class mail, and certified mail, to the primary address listed on

6

Respondent's Attorney Information System profile. Respondent failed to respond in any manner.

On or about April 5, 2022, Ms. Godsell filed a complaint against Respondent with Petitioner. By letter dated May 12, 2022, Bar Counsel requested that Respondent provide a written response to Ms. Godsell's complaint no later than May 27, 2022. Respondent failed to respond.

On April 29, 2022, Darin Bush, an investigator in the Office of Bar Counsel, emailed Respondent. Respondent failed to respond. On May 2, 2022, Mr. Bush called Respondent's law office and left a message with the receptionist. On May 11, 2022, Respondent returned Mr. Bush's telephone call and stated that he was unaware of Bar Counsel's investigation, having not received any of Bar Counsel's emails or mail. Respondent stated that his firm's email system was corrupted and requested that further communication be directed to Douglas Yeatman's email address.

On May 23, 2022, Bar Counsel sent another letter concerning the Petree matter to Respondent via Douglas Yeatman's email address and by facsimile, requesting a response to the complaint and an explanation for his failure to respond to the letters dated February 3, 2022 and March 3, 2022. Respondent failed to respond. On July 6, 2022, Bar Counsel forwarded correspondence to Respondent regarding the McNulty matter, requesting a written response to the complaint, a complete copy of the client file, including all communications, and the jurisdiction and estate number for the McNulty matter.

On July 14, 2022, Mr. Bush met with Respondent at his law office and provided him with copies of Bar Counsel's prior correspondence. On July 21, 2022, Respondent

provided his response to Ms. Godsell's complaint. Respondent failed to explain his lack of communication and the delay in making the final distribution. Also on July 21, 2022, Respondent requested an extension to provide a response to Ms. Iglehart's complaint. Bar Counsel granted an extension to August 3, 2022.

On August 3, 2022, Respondent submitted his response to the Iglehart complaint. The response failed to address Respondent's lack of communication with the Igleharts. By letters dated August 25, 2022, Bar Counsel requested that Respondent provide the client files for the Petree and McNulty matters. On September 20, 2022, having received no response from Respondent to the client file requests, Bar Counsel sent Respondent two more letters requesting the client files, as well as explanations for his failure to timely respond to Bar Counsel's August 25 letters. Respondent failed to respond to either of the September 20 letters.

On November 22, 2022, Mr. Bush met with Respondent and Douglas Yeatman at the Yeatmans' office. At the meeting, Respondent and Douglas Yeatman told Mr. Bush that Respondent would retire effective January 1, 2023.

On January 6, 2023, Bar Counsel attempted to contact Respondent at his law firm via telephone, but no one answered. Bar Counsel then called Douglas Yeatman's cell phone number and left him a voicemail, requesting that Respondent return the phone call to discuss Respondent's retirement status. Douglas Yeatman did not return the phone call.

On January 26, 2023, Bar Counsel forwarded correspondence to Douglas Yeatman via first-class and certified mail in an attempt to reach Respondent. Douglas Yeatman did not respond. On February 14 and 15, 2023, Mr. Bush called Douglas Yeatman's cell phone

number and requested that Douglas Yeatman return his phone call. Neither Respondent nor Douglas Yeatman returned the call.

On or about February 16, 2023, Mr. Bush emailed both Respondent and Douglas Yeatman, requesting that they contact him. Neither Respondent nor Douglas Yeatman did so. By letter dated February 23, 2023, Bar Counsel forwarded correspondence to both Respondent and Douglas Yeatman via first-class mail and certified mail to their home addresses, requesting that they contact Mr. Bush. The green card accompanying the certified mailing to Respondent was returned signed, but neither Respondent nor Douglas Yeatman contacted Mr. Bush.

## II

## Proceedings Before the Hearing Judge

Petitioner served Respondent with the PDRA on April 2, 2024. Respondent did not file an answer to the PDRA, prompting Petitioner to file a motion for order of default on April 19, 2024. On May 1, 2024, the hearing judge issued an Order of Default against Respondent, which stated that it was:

> ORDERED, that an Order of Default be entered against the Respondent … for failure to respond to the [PDRA] within the time permitted …; and it is further
>
> ORDERED, that the Clerk shall issue a notice to the Respondent at his last known address informing him that the Order of Default has been entered and that he may move to vacate the Order within thirty (30) days after entry; and it is further
>
> ORDERED, that a hearing shall be held in this matter on June 11, 2024 at 9:00 a.m., at which time the Petitioner shall be permitted to present such evidence as it deems necessary to allow the [hearing judge] to carry out her assigned function as set forth in Maryland Rule 19-727.

9

Respondent did not subsequently file a motion to vacate the Order of Default.

On May 20, 2024, Petitioner filed a motion for sanctions, based on Respondent's failure to respond to various discovery requests. Respondent failed to respond to the motion for sanctions.

The evidentiary hearing went forward as scheduled on June 11, 2024. Respondent appeared at the hearing, accompanied by Douglas Yeatman. Although Douglas Yeatman did not enter an appearance in the Circuit Court to represent Respondent, the hearing judge allowed Douglas Yeatman to assist Respondent, who was having difficulty hearing the proceedings.

The hearing judge orally granted Petitioner's motion for sanctions for the discovery violations, ordered the averments in the PDRA deemed admitted, and precluded Respondent from calling any witnesses or presenting any documents at the hearing. However, the hearing judge permitted Respondent to testify for purposes of establishing mitigating factors. Petitioner introduced 22 exhibits. Respondent and Douglas Yeatman both provided unsworn oral statements to the hearing judge, which the judge construed as evidentiary submissions with respect to mitigation. Respondent stated that, at the time the complaints against him were filed with Petitioner, a representative of the Office of Bar Counsel told Respondent that, if he were to retire, the matter "would go away." Respondent further told the hearing judge: "[A]bout a week ago we sent formal papers to the [Supreme Court of Maryland] that I had retired. And I have not been practicing law for the last two years. I have been completely retired." Douglas Yeatman stated that Respondent had not practiced law for three years. When the hearing judge asked about Respondent's precise

10

date of retirement, Douglas Yeatman stated that Respondent "didn't know he had to submit something," but claimed that he was to blame, not Respondent, for the failure to submit the necessary documentation of Respondent's retirement at the time Respondent stopped practicing law.[6]

When the hearing judge asked why Respondent had not responded to the PDRA and, in particular, had not raised Bar Counsel's purported promise to make the complaint "go away" if Respondent retired, Douglas Yeatman said he had thought the Office of Bar Counsel "would have kept their word."

In his remarks to the hearing judge, Respondent did not mention the McNulty matter. With respect to the Petree matter, Respondent told the hearing judge that the Petree estate

> was settled a long time ago, approved by the Court in every way. And the only time we got a compliant [sic] was after it was all filed, after everything was completed, and that was because the personal representative and her son didn't want to turn the money over to the trustee named in the will. And that – there's nothing more we could have done in that estate. We completed it. We were awarded a fee of $40,000, which has never been paid. And there is nothing more we could do with that estate because they didn't want to turn the funds over to the trustee for fear that it would just be all spent by the time the life tenant passed away. And there was nothing more that we could do about that because that's what the will said to do.

> So I don't know what else could be done or we could have done with that estate. It took over three years; it took a long time. It was very complicated. There was a caveat filed. There were a couple of houses that had to be vacated and one was uninhabitable. It was pretty complicated. But in any event, we handled the estate, I think, very well. And … the complaint that was filed came from out of the blue because we never received any information from

---

[6] Under Regulation i.5 of the Client Protection Fund of the Bar of Maryland, an attorney who wishes to change their status from active to inactive/retired must submit a notarized affidavit of inactive/retired status on the requisite form.

them that said they were complaining. As a matter of fact, they consented to the fees.

**III**

**The Hearing Judge's Conclusions of Law**

The hearing judge found that clear and convincing evidence supported the conclusion that Respondent violated several rules of professional conduct, as detailed below.

*Rule 1.1 - Competence*

The hearing judge concluded that Respondent violated Rule 1.1 by: (1) mishandling several aspects of the administration of the Ben Petree estate; and (2) failing to administer the Margaret McNulty trust properly, *i.e.*, by neglecting one of the beneficiaries of the trust. With respect to the Petree estate matter, the hearing judge explained that Respondent's failure to file a Fourth Account – and thereby comply with the deadlines established under section 7-305 of the Estates and Trusts Article – led the Register of Wills for Montgomery County to issue a show cause referral on September 10, 2020. The hearing judge further concluded that Respondent could have, but failed to, request an extension of time to prevent court intervention. During the initial show cause hearing on April 1, 2021, because Respondent had not yet completed a Fourth Account, the court continued the hearing until May 4, 2021, giving Respondent more than 30 additional days to complete the account. It was only after the court continued the hearing one additional day to May 5, 2021, that Respondent filed the Fourth and Final Account.

12

In addition, the hearing judge observed that on April 24, 2020, Respondent directed the Igleharts to send all the bills for the Silver Spring Property to him so that he could provide them to the trustee for payment. However, Respondent waited more than a year to provide the trustee with the necessary information. The hearing judge concluded that Respondent's delay "created confusion for the Igleharts, who would forward the bills to the Respondent upon receipt as directed, only to learn later that none of the bills were being paid."

With respect to the McNulty trust, the hearing judge observed that, upon making the initial distribution of $37,500 to Priests of the Sacred Heart on August 15, 2014, Respondent advised that there were additional tasks that needed to be performed, but that in the coming months, he expected to be able to make another distribution. The hearing judge found that Respondent "allowed sixteen months to pass before providing another update[.]" Respondent then told Priests of the Sacred Heart that he anticipated making the final distribution before December 31, 2015. After that communication, the hearing judge found, Respondent "allowed an additional two-and-a-half years to pass before providing an update on the status of the final disbursement." Respondent did not contact Priests of the Sacred Heart again until March 24, 2020, when he advised that he would make a final distribution within 60 days. As of November 2022, despite attempts to contact Respondent, Priests of the Sacred Heart had not heard from Respondent again or received a final distribution.

*Rule 1.3 - Diligence*

The hearing judge concluded that Respondent violated Rule 1.3 for the reasons stated in reference to Rules 1.1 and 1.4.

*Rule 1.4 - Communication*

The hearing judge concluded that Respondent violated Rule 1.4(a)(2) and (3) in both the Petree and McNulty matters:

> Between June 2020 and April 2021, the Respondent failed to communicate with Ms. Iglehart or her son despite persistent and varied attempts to reach him and his son, [Douglas] Yeatman…. The significance of the communication failure was such that the Igleharts had to seek assistance from another attorney to contact the Respondent…. Ultimately the attorney assisting the Igleharts arranged a video conference call whereby communication between the Respondent and the Igleharts was restored, albeit temporarily until July 20, 2021, the final date the Igleharts received communication from Respondent….

> While the Respondent administered the estate of Ms. McNulty, he ceased communicating with one of Ms. McNulty's beneficiaries altogether. After a March 24, 2020, phone call, the Respondent stopped communicating with anyone at Priests of the Sacred Heart despite continuing requests for further information about a final distribution which was believed to be forthcoming.

*Rule 8.1 - Bar Admission and Disciplinary Matters*

The hearing judge concluded that Respondent violated Rule 8.1(b) by failing to respond to Bar Counsel's letters and by failing to provide documents requested by Bar Counsel during the investigations Bar Counsel conducted in response to the two complaints filed against Respondent.

*Rule 8.4 - Misconduct*

The hearing judge concluded that Respondent violated Rule 8.4(a) because he violated several other rules of professional conduct. The hearing judge also concluded that

14

"Respondent's conduct was prejudicial to the administration of justice and brings the legal profession into disrepute in violation of Rule 8.4(d)."

*Mitigating Factors*

With respect to mitigating factors, the hearing judge found that Respondent does not have any prior discipline on his record. The hearing judge also found that Respondent is unlikely to commit additional misconduct, based on his statements at the hearing that he is retired, that he had not engaged in the practice of law for the prior two years, and that he does not intend to practice law again.

*Aggravating Factors*

The hearing judge concluded that Petitioner established the existence of three aggravating factors: (1) multiple violations of the rules of professional conduct; (2) bad faith obstruction of the attorney discipline proceeding; and (3) substantial experience in the practice of law:

> The evidence establishes that Respondent committed multiple offenses in administering the estates of Ben Petree and Margaret McNulty as well as throughout the duration of Bar Counsel's investigations thereof. The Court finds bad faith obstruction of the attorney discipline proceeding where the Respondent failed to reply to numerous letters and requests by Bar Counsel to provide his entire client file in both estate matters. Moreover, the Respondent, who was admitted to the Maryland Bar in 1962, has substantial experience in the practice of law.

However, the hearing judge concluded that Petitioner did not prove the aggravating factor of a pattern of misconduct. The hearing judge reasoned that a pattern of misconduct "requires frequent or widespread malfeasance that the Court does not find to be present."

# IV

## Standard of Review

"This Court has original and complete jurisdiction in an attorney disciplinary proceeding and conducts an independent review of the record. The hearing judge's findings of fact are left undisturbed unless those findings are clearly erroneous. We review the hearing judge's conclusions of law without deference." *Attorney Grievance Comm'n v. Hoerauf*, 469 Md. 179, 207-08 (2020) (cleaned up). Where, as here, neither party files any exceptions to the hearing judge's findings of fact, we "may treat the findings of fact as established." Md. Rule 19-740(b)(2)(A). This Court reviews de novo the hearing judge's conclusions of law. Md. Rule 19-740(b)(1).

# V

## Discussion

We opt to treat the hearing judge's findings of fact as established under Rule 19-740(b)(2)(A). We now consider the hearing judge's conclusions of law. For the reasons stated below, we conclude that clear and convincing evidence demonstrates that Respondent violated Rules 1.1 (Competence), 1.3 (Diligence), 1.4(a)(2) and (3) (Communication), 8.1(b) (Bar Admission and Disciplinary Matters), and 8.4(a) and (d) (Misconduct).

### *Rule 1.1 (Competence)*

Rule 1.1 dictates that an attorney "shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Clear and convincing evidence

supports the hearing judge's conclusion that Respondent violated Rule 1.1 in both the Petree and McNulty matters.

With respect to the Petree matter, Respondent's failure to file the Fourth Account by the deadline established under section 7-305 of the Estates and Trusts Article led to the issuance of a show cause referral in September 2020 and two continued show cause hearings until Respondent ultimately filed the Fourth Account on May 4, 2021.

Respondent also violated Rule 1.1 by neglecting to timely provide the trustee with the information necessary to pay the bills for the Silver Spring Property. Respondent directed the Igleharts to send all bills for the Silver Spring Property to him in April 2020. Although the Igleharts did as Respondent instructed, Respondent waited more than a year to provide the bills and associated account information to the trustee. As the hearing judge found, Respondent's delay created confusion for the Igleharts, who repeatedly had to forward unpaid Pepco bills to Respondent.

In the McNulty matter, Respondent's violation of Rule 1.1 concerns his failure to provide Priests of the Sacred Heart with a final distribution. Respondent notified the organization of Ms. McNulty's bequest in December 2013 and provided an initial distribution of $37,500 in August 2014. On several occasions over the following six years, Respondent told representatives of Priests of the Sacred Heart that a final distribution would be forthcoming. However, as of November 2022, despite attempts to contact Respondent, Priests of the Sacred Heart had not heard again from Respondent or received a final distribution.

*Rule 1.3 (Diligence)*

Rule 1.3 requires attorneys to "act with reasonable diligence and promptness in representing a client." "The Rule can be violated by failing to advance the client's cause or endeavor[.]" *Attorney Grievance Comm'n v. Bah*, 468 Md. 179, 208 (2020) (internal quotation marks and citation omitted). "The same rationale that supports a Rule [1.1] violation can support a Rule [1.3] violation." *Id.* at 209.

We agree with the hearing judge that Respondent violated Rule 1.3 in the Petree and McNulty matters for the reasons stated in reference to Rules 1.1 and 1.4.

*Rule 1.4 (Communication)*

Rule 1.4 provides, in pertinent part:

(a) An attorney shall:
…
(2) keep the client reasonably informed about the status of the matter; [and]
(3) promptly comply with reasonable requests for information[.]

An attorney violates Rule 1.4 when "a client tries repeatedly to contact the attorney, but the attorney fails to respond." *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 185 (2015). It is also a violation of Rule 1.4 when "an attorney fails to communicate crucial information about the status of the case." *Id.*

We agree with the hearing judge's conclusion that Respondent violated Rule 1.4(a)(2) and (3) in the Petree and McNulty matters. Respondent's failure to respond to the Igleharts' continued attempts for an update on outstanding tasks, and their requests for information between June 2020 and April 2021, led to the Igleharts seeking assistance from another attorney to restore communication with Respondent. Following a video conference

18

call on April 21, 2021, communication between Respondent and the Igleharts was temporarily restored. However, July 20, 2021 was the last time the Igleharts received any communication from Respondent.

Respondent violated 1.4(a)(2) and (3) in the McNulty matter when he ceased communicating with anyone at Priests of the Sacred Heart following a March 24, 2020 phone call, despite continuing requests from Priests of the Sacred Heart regarding a final distribution that never came. Between December 10, 2020 and January 17, 2022, representatives of Priests of the Sacred Heart made five attempts to contact Respondent, all to no avail.

*Rule 8.1 (Bar Admission and Disciplinary Matters)*

Rule 8.1 provides, in pertinent part:

An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:
…
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

We agree with the hearing judge that Respondent violated Rule 8.1(b) in the Petree and McNulty matters by failing to respond to several letters from Bar Counsel and by failing to provide a copy of the client file in both matters.

19

*Rule 8.4 (Misconduct)*

Rule 8.4 provides, in relevant part:

It is professional misconduct for an attorney to:
(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; [or]
…
(d) engage in conduct that is prejudicial to the administration of justice[.]

An attorney violates Rule 8.4(a) if they violate any other rule of professional conduct. *Hoerauf*, 469 Md. at 214. "Generally, an attorney violates [Rule 8.4(d)] when an attorney's conduct impacts negatively the public's perception or efficacy of the courts or legal profession." *Id.* at 214-15 (cleaned up).

Having violated several other rules of professional conduct, Respondent violated Rule 8.4(a). *Id.* at 215. And we agree with the hearing judge that Respondent's conduct in the Petree and McNulty matters was prejudicial to the administration of justice and brings the legal profession into disrepute, in violation of Rule 8.4(d).

*Aggravating Factors*

We have listed pertinent aggravating factors in an attorney grievance case as including:

(1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [Rules of Professional Conduct]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's

20

consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Sperling*, 459 Md. 194, 275 (2018) (citation omitted).

The hearing judge found the existence of three aggravating factors: (1) multiple violations; (2) bad faith obstruction of the disciplinary proceeding; and (3) substantial experience in the practice of law. Petitioner excepts to the hearing judge's failure to find the aggravating factor of a pattern of misconduct.

We agree that the three aggravating factors found by the hearing judge have been established by clear and convincing evidence. We sustain Petitioner's exception to the failure to find the aggravating factor of a pattern of misconduct. In addition, we conclude that another aggravating factor is present: failure to acknowledge the wrongful nature of the misconduct.

As our discussion above demonstrates, Respondent committed *multiple violations* of the Rules of Professional Conduct in the Petree and McNulty matters. Respondent engaged *in bad faith obstruction of the disciplinary proceedings* by failing to respond to several letters from Bar Counsel and requests by Bar Counsel to provide his client files in both matters.

Respondent displayed a *pattern of misconduct* by committing multiple, similar violations over time in two separate matters. *See Sperling*, 459 Md. at 276 (aggravating factor of pattern of misconduct "applies when an attorney's behavior shows a pattern of inappropriate conduct, as evinced by multiple violations over time, or a series of acts with one goal"). Respondent failed to communicate both with the Igleharts in connection with

the Petree matter and with Priests of the Sacred Heart in connection with the McNulty matter. In addition, Respondent failed to take basic steps to competently handle both matters. Finally, Respondent repeatedly failed to timely respond to Bar Counsel's letters and requests for documents in connection with the investigations of both matters. Based on this record, we conclude that Petitioner proved a pattern of misconduct by clear and convincing evidence.

In addition, based on our independent review of the record and oral argument in this Court, we conclude by clear and convincing evidence that Respondent has *failed to acknowledge the wrongful nature of his misconduct*. Before the hearing judge, Respondent expressed no remorse for, or even acknowledged, his failure to communicate for long stretches of time with the Igleharts and Priests of the Sacred Heart. *See Attorney Grievance Comm'n v. Sloane*, 483 Md. 131, 166 (2023) (aggravating factor present where "[t]here is not a single instance in the record where Respondent acknowledges his improper behavior"). Indeed, Respondent seemingly blamed the problems in the attorney-client relationship on the Igleharts and their alleged displeasure with the terms of the will. *See Attorney Grievance Comm'n v. White*, 480 Md. 319, 387-88 (2022) (sustaining hearing judge's finding of the aggravating factor of refusal to acknowledge wrongful nature of the misconduct where "the record clearly demonstrates that Respondent blamed others for his wrongdoing"). Although Respondent had defaulted his opportunity to contest the allegations in the PDRA, he told the hearing judge that he thought "we handled the [Petree] estate … very well" and observed that his firm had not been paid its fee for that representation. He also claimed that Ms. Iglehart's complaint "came from out of the blue,"

22

despite the fact that Mr. Iglehart repeatedly expressed his frustration to Respondent about Respondent's failure to communicate and to ensure that the trustee had the information he needed to pay the bills for the Silver Spring Property. Indeed, Respondent's failures to communicate resulted in the Igleharts having to involve Mr. Winger, an attorney at another law firm, on two separate occasions.[7]

Finally, Respondent was admitted to the Maryland Bar in 1962 and has *substantial experience in the practice of law.*

In sum, we conclude that there are five aggravating factors in this case: (1) a pattern of misconduct; (2) multiple violations; (3) bad faith obstruction of the attorney discipline proceeding; (4) the refusal to acknowledge the wrongful nature of the misconduct; and (5) substantial experience in the practice of law.

*Mitigating Factors*

We have previously listed the following mitigating factors:

(1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to the [Attorney Grievance] Commission or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency ...; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of

---

[7] In oral argument before this Court, Respondent reiterated that his firm had done a "a good job" in the Petree matter, had "earned a substantial fee that has never been paid" for that work, and that Ms. Iglehart's complaint "came out of the blue as far as we're concerned." He again failed to acknowledge the wrongful nature of his conduct in any respect.

the [Rules of Professional Conduct]; and (14) unlikelihood of repetition of the misconduct.

*Sperling*, 459 Md. at 277-78 (citation omitted).

The hearing judge concluded that Respondent has *no prior discipline* on his record. The hearing judge also found that Respondent is *unlikely to commit additional misconduct*, based on his statements at the hearing that he is retired, that he had not engaged in the practice of law for the prior two years, and that he does not intend to practice law again. We agree that these mitigating factors are present.[8]

## VI

### Sanction

In deciding the appropriate sanction, "we are guided by our interest in protecting the public and the public's confidence in the legal profession." *Attorney Grievance Comm'n v. Lewis*, 437 Md. 308, 329 (2014) (internal quotation marks and citation omitted). "As a result, our purpose in deciding the appropriate sanction is not to punish the lawyer, but to protect the public, and deter other lawyers from engaging in similar misconduct." *Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 711 (2019) (internal quotation marks and citation omitted). "When determining the appropriate discipline, we consider the facts and circumstances of each case and order a sanction that is commensurate with

---

[8] We note, however, that there is a difference between simply saying one has retired from the practice of law and actually retiring from the practice of law. Respondent did not submit an affidavit of inactive/retirement status to the Client Protection Fund at the time he claimed to have retired. We also take judicial notice of the fact that Respondent was administratively suspended from the practice of law in Maryland by order of this Court dated March 24, 2022, for failure to pay the annual $205 assessment to the Client Protection Fund, and that he has remained in that status until today.

24

the nature and gravity of the violations and the intent with which they were committed."

*Id.* at 712 (internal quotation marks and citation omitted).

Bar Counsel recommends disbarment, citing among other cases, *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325 (2013), and *Attorney Grievance Comm'n v. Park*, 427 Md. 180 (2012). At oral argument, when asked to address the appropriate sanction, Douglas Yeatman requested that we not disbar Respondent, which he said would "ruin his 60-year … tenure of being a Maryland lawyer with a great reputation."

We agree with Bar Counsel that this case in material respects resembles *Kremer*, *Park*, and other "cases involving flagrant neglect of client affairs, including failure to communicate with clients or respond to inquiries from Bar Counsel[.]" *Kremer*, 432 Md. at 338 (quoting *Attorney Grievance Comm'n v. Lara*, 418 Md. 355, 365 (2011)). *Kremer* involved an attorney who failed to file bankruptcy petitions for two clients, and who had numerous hearings postponed in two other clients' cases, leading to the dismissal of one of those other cases. *Id.* at 335. The attorney also failed to communicate with the four clients, despite many attempts by the clients to do so. Further, the attorney abandoned the clients' cases before completion and failed to return unearned fees and documents in three of the four client matters. *Id.* at 336. In the fourth matter, the attorney returned the unearned fee and documents, but not in a timely manner. *Id.* In addition, the attorney failed to respond to the PDRA filed in that case. We concluded that the attorney violated Rules 1.1, 1.3, 1.4, 1.16(d), 8.1(b), and 8.4(d). *Id.* at 335-37. *Kremer* also involved two of the aggravating factors that are present in this case: a pattern of misconduct and bad faith obstruction of the

disciplinary proceeding. *Id.* at 340-41. The attorney in *Kremer* established no mitigating factors. *Id.* at 341. We concluded that disbarment was the appropriate sanction. *Id.*

*Park* concerned an immigration attorney who filed incomplete documents on behalf of a client and then failed to act in a timely manner to correct the documents after being notified of deficiencies in them. 427 Md. at 187-88. He also failed to keep his client advised of the progress of the applications and to respond to the client's attempts to obtain information about the case. *Id.* at 188-89. He also failed to inform the client that he was closing his law office and did not provide a working telephone number where he could be contacted. *Id.* at 189. In addition, the attorney failed to refund the unearned portion of the client's prepaid fee and failed to return papers to which the client was entitled. *Id.* The attorney also failed to respond to two letters from Bar Counsel and a request by an investigator in the Office of Bar Counsel to schedule a meeting to discuss the client's complaint. *Id.* at 190. We concluded that the attorney violated Rules 1.1, 1.3, 1.4(a), 1.16(d), 8.1(b), and 8.4(d). *Id.* at 192-94. We mentioned no aggravating factors in *Park*, but noted the absence of any mitigating factors. *See id.* at 196. We disbarred the attorney, explaining that

> disbarment is the appropriate sanction when an attorney abandons a client by failing to pursue the client's interests, failing to communicate with the client, ignoring a client's repeated requests for status updates, terminating the representation without notice by failing wholly to provide effective services, and failing to return unearned fees. [The attorney] did all of this and failed to cooperate with Bar Counsel's lawful demands for information, in violation of MLRPC 8.1.

*Id.* at 196.

Here, Respondent violated most of the same rules as the attorneys in *Kremer* and *Park*. Although Respondent performed some services of value for his clients, there came a time when Respondent stopped communicating with the Igleharts and Priests of the Sacred Heart and thereby effectively abandoned his clients, Ms. Iglehart and the McNulty estate. Unlike in *Kremer* and *Park*, there was no finding here that Respondent violated Rule 1.16(d). However, more aggravating factors are present in this case than in *Kremer* and *Park*. In particular, as in *Sloane*, Respondent's "unwillingness or inability to appreciate his wrongful conduct is critical." *Sloane*, 483 Md. at 166.

We have considered that Respondent practiced law for 60 years without receiving any prior discipline. It is unfortunate that Respondent ended his career as he did. However, the aggravating factors significantly outweigh the mitigating factors in this case. From a client's perspective, professional misconduct is no less problematic at the end of a legal career than it is at the beginning. That is our perspective as well.

**VII**

**Conclusion**

For the reasons discussed above, we conclude that Respondent violated Rules 1.1, 1.3, 1.4(a)(2) and (3), 8.1(b), and 8.4(a) and (d). We order that Respondent be disbarred.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST FRANCIS EDWARD YEATMAN.**

27